IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
SAINT THOMAS DIVISION

United States of America
*Plaintiff,*

v.

Richardson Dangleben, Jr.
*Defendant.*

Criminal No. 3:23-0072-RAM-GAT

**Response to Government Motion to Stay Proceedings**

This response is filed in compliance with the Court's Order (ECF No. 123) directing Mr. Dangleben to respond to the government's motion to stay proceedings. (ECF No. 122).

### I.     Procedural Background

Mr. Dangleben is charged in Count One with using a firearm during a crime of violence resulting in death pursuant to 18 U.S.C. §924(j). (ECF No. 24 at 1). Because the violent felony alleged is murder, that offense is capital-eligible.

On November 16, 2023, the Court ordered that the government file any notice pursuant to 18 U.S.C. §3593(a) no later than January 12, 2024. (ECF No. 35). On the date of the deadline, the government filed a motion for extension of time. (ECF No. 40). In that motion, the government represented to the Court that it would file any notice no later than February 12, 2024. (ECF No. 40 at 1).[1] Over Mr. Dangleben's objection (ECF No. 43), the Court granted that motion, thereby

---

[1] That motion contained a typographical error referencing "February 13, 2023" instead of February 12, 2024. (*See* ECF No. 46 at 5 & fn. 2).

1

allowing the government to file any notice by February 12, 2024. (ECF No. 46). On February 7, 2024, the government filed a notice stating that it "intends to proceed with either a non-capital trial or plea agreement in this matter and will not seek the death penalty for Richardson Dangleben, Jr." (ECF No. 47). No supplemental, amending or superseding notices were filed by the government by the Court-imposed February 12, 2024 deadline.

Almost a year later, on January 20, 2025, his first day in office, newly inaugurated President Trump signed an Executive Order titled "Restoring the Death Penalty and Protecting Public Safety." In relevant part, that Order provided:

> **Sec. 3**. *Federal Capital Punishment.* (a) The Attorney General shall pursue the death penalty for all crimes of a severity demanding its use.
> (b) In addition to pursuing the death penalty where possible, the Attorney General shall, where consistent with applicable law, pursue Federal jurisdiction and seek the death penalty regardless of other factors for every federal capital crime involving:
> (i) The murder of a law-enforcement officer; or
> (ii) A capital crime committed by an alien illegally present in this country.

While Mr. Dangleben is not an "alien illegally present in this country," the decedent in this case was "a law enforcement officer" employed by the Virgin Islands Police Department. The executive order thus instructs that in this case "the Attorney General shall, where consistent with applicable law, pursue Federal jurisdiction and seek the death penalty regardless of other factors."[2]

On February 5, 2025, the Attorney General issued a memorandum to all Department of Justice Employees, entitled "Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions." In relevant part, Section III of that memorandum provided:

> III. **Reviewing No-Seek Decisions Since January 20, 2021**
>
> The Attorney General's Capital Review Committee is directed to review no-seek decisions in all pending capital-eligible cases *(i.e.,* death-eligible cases that have not yet resulted in a conviction) charged between January 20, 2021, and January 19, 2025. This group shall reevaluate no-seek decisions and whether additional capital charges are appropriate. Particular

---

[2] Richardson Dangleben, Jr. does not concede the constitutional, statutory or regulatory legitimacy of the Order. Further, he reserves his right to raise procedural and substantive challenges based on the Constitution, applicable statutes and regulations, case precedent, and any other grounds.

> attention shall be paid to cases involving defendants associated with cartels or transnational criminal organizations, capital crimes committed by defendants present in the United States illegally, and capital crimes committed in Indian Country or within the federal special maritime and territorial jurisdictions. The review required by this paragraph shall be completed within 120 days.

(footnote omitted). Although employing slightly different rhetoric than the Executive Order, the Memorandum stated:

> Absent significant mitigating circumstances, federal prosecutors are expected to seek the death penalty in cases involving the murder of a law-enforcement officer and capital crimes committed by aliens who are illegally present in the United States.[3]

On February 12, 2025, the government filed a motion to stay proceedings in Mr. Dangleben's case for "at least 120 days in light of the Attorney General's February 5, 2025 Memorandum Reviving the Death Penalty And Lifting the Moratorium on Federal Executions." (ECF No. 122 at 1; *see also id.* at 3). That motion makes clear that Mr. Dangleben's case will be reevaluated by the new Attorney General's Capital Review Committee for determination as to whether the government will seek the death penalty against Mr. Dangleben. (ECF No. 122 at 2).[4]

On February 12, 2025, the Court ordered Mr. Dangleben to file his response to the government's motion to stay proceedings.

## II. Mr. Dangleben Objects to any "Stay" for the Purposes of "Reevaluation" of the Government's Final Decision not to Seek the Death Penalty in this Case

Discussed above, the Motion to Stay was brought solely "in light of the Attorney General's February 5, 2025 *Memorandum Reviving the Death Penalty And Lifting the Moratorium on Federal Executions*.

---

[3] Richardson Dangleben, Jr. does not concede the constitutional, statutory or regulatory legitimacy of the Memorandum. Further, he reserves his right to raise procedural and substantive challenges based on the Constitution, applicable statutes and regulations, case precedent, and any other grounds.

[4] As stated herein, Mr. Dangleben reserves all rights to challenge any further notice or decision—in whatever form—made by the Attorney General, the Capital Review Committee or any other Department of Justice entity purporting to make decisions about seeking the death penalty.

(ECF No. 122 at 1). For a variety of compelling reasons, the Attorney General's memorandum fails to establish good cause to stay the proceedings as requested by the government, and Mr. Dangleben strenuously objects to any such reevaluation.

As a preliminary observation, the Government was required by Order of this Court to file a Notice of Intent to seek the death penalty, if at all, **over a year ago**. There can be no question as to the Court's authority to enter such an Order, and the Government did not seek (prior to, or even a reasonable time after the February 12, 2024 deadline), an extension for good or any cause.

Upon the formal filing of the "no seek" Notice, the case ceased to be one where the death penalty was "a legal possibility" *See, generally*, *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003 )(explaining that a case "remains subject to these Guidelines until the imposition of the death penalty is no longer a legal possibility.")  The Guidelines are "the defining architecture for any measure of effective performance" of counsel in capital cases," and provide that "[i]nvestigation and planning for both phases must begin immediately upon counsel's entry into the case …" History of Guideline, 10.1.

Once death was no longer a "legal possibility", Mr. Dangleben lost a number of the enhanced protections available to a death-eligible accused. One such clear protection is the right to "prompt" assistance of counsel "learned in the law applicable to capital cases", 18 U.S.C. 3005, as more fully discussed in Section III, *infra*.

Accordingly, it is anticipated and well-founded that such "Learned Counsel" is indispensable to fully developing and properly raising the multitude of reasons why this Honorable Court should not permit the Government's wholly arbitrary "reevaluation" of its formal decision. Upon the prompt appointment of Learned Counsel, Mr. Dangleben will be able to demonstrate that the government's motion to stay proceedings for a reevaluation of its decision not to seek the death penalty must be denied.

### III. Richardson Dangleben, Jr. is Entitled to the Prompt Appointment of Counsel Learned in Capital Cases Before Responding on the Merits to the Government's Motion to Stay

18 U.S.C. §3005 states, in pertinent part:

> "Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, **shall promptly**, upon the defendant's request, assign 2 such counsel, of whom **at least 1 shall be learned in the law applicable to capital cases**, and who shall have free access to the accused at all reasonable hours. In assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization, or, if no such organization exists in the district, of the Administrative Office of the United States Courts." (emphasis added)

As the First Circuit has held, under §3005, "promptly means promptly after indictment, not (as the government asserts) only after the Attorney General has made a determination to seek the death penalty". *In re Sterling-Suarez*, 306 F.3d 1170 (1st Cir., 2002). *See also*, *United States v. Cordova*, 806 F.3d 1085, 1101, 420 U.S. App. D.C. 138 (D.C.C. 2015) ("Even among courts that disagree as to whether [learned counsel] is required after the government announces that it will not seek the dealt penalty, there is agreement that 'prompt' means promptly after indictment, and not later … While the death penalty is still on the table, there is a specific role for an attorney 'learned in the law applicable to capital cases' to play in the defense."), *United States v. Medina-Rivera*, 285 F. Supp. 3d 505, 507-08 (D.P.R. 2018)("The triggering event for the appointment of learned counsel is the filing of the indictment.")(citing *Sterling Suarez*); *Guide to Judiciary Policy, Vol 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 6: Federal Death Penalty and Capital Habeas Corpus Representations,* § 620.10.10 (a)("As required by 18 U.S.C. §3005, **at the outset of every capital case**, courts should appoint two attorneys, at least one of whom is experienced in and knowledgeable about the defense of death penalty cases.")(emphasis added).

Here, the Executive Order and the Attorney General's Memorandum have created a truly

5

unprecedented situation—the wholesale revisiting of no-seek decisions made during a four-year period with an eye toward applying either (1) a mandatory decision to seek the death penalty against certain categories of defendants, including those charged with the murder of law enforcement officers, or (2) a strong presumption in favor of seeking the death penalty against those categories of defendants.[5] The prompt appointment of learned counsel based on this unprecedented situation is both necessary and appropriate pursuant to 18 U.S.C. §3005.

The historical commentary to the *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003) makes clear that:

> The period between an arrest or detention and the prosecutor's declaration of intent to seek the death penalty is often critically important. … [E]ffective advocacy by defense counsel during this period may persuade the prosecution not to seek the death penalty. Thus, it is imperative that counsel begin investigating mitigating evidence and assembling the defense team as early as possible-- **well before the prosecution has actually determined that the death penalty will be sought.** (emphasis added)

As a practical matter, the government's motion, in conjunction with the Attorney General's Memorandum and the President's Executive Order, have returned this arguably capital-eligible case[6] to square one.[7] "[E]ffective advocacy by defense counsel during this period may persuade the

---

[5] As noted herein, Richardson Dangleben, Jr. does not concede the constitutional, statutory or regulatory legitimacy of the Executive Order or the Memorandum. Further, he reserves his right to raise procedural and substantive challenges based on the Constitution, applicable statutes and regulations, case precedent, and any other grounds.

[6] Richardson Dangleben, Jr. does not concede that the government is permitted—after providing notice that it will not be seeking the death penalty—to (a) revisit that position, and (b) reverse its decision not to seek the death penalty.

[7] *See also* ABA Guideline 1.1, which clarifies that heightened capital case requirements "extend to all stages of every case in which the jurisdiction may be entitled to seek the death penalty." (Attachment ["Att."] A at 919). *See also* Supplementary Guideline 1.1 ("These Guidelines apply from the moment that counsel is appointed and extend to all stages of every case in which the jurisdiction may be entitled to seek the death penalty, including initial and ongoing investigation, pretrial proceedings, trial, appeal, post-conviction review, competency-to-be-executed proceedings, clemency proceedings and any connected litigation." [Att. B at 679]).

prosecution not to seek the death penalty." *Id.* Mr. Dangleben thus requires the effective advocacy by defense counsel at this critical stage in these proceedings. The complex nature of the investigation and preparation of a capital case, including issues relating to the pre-trial death penalty authorization procedures (often referred to as the "DOJ Protocol" and described more fully in the Justice Manual (formerly United States Attorneys' Manual), § 9-10.000, *et. seq.*, mandate that learned counsel be appointed at the earliest time possible. *See generally*, *In re Sterling Suarez, supra*, and *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003), *supra*. Now is that time.

In the current procedural context, and as asserted in section II, *ante*, the prompt appointment of learned counsel is absolutely critical. On February 15, 2025, Mr. Dangleben exercised his statutory rights pursuant to 18 U.S.C. §3005.[8] To date, Mr. Dangleben has been represented by one attorney only. Until such time as this Honorable Court enters an Order that the Government's violation of the Notice deadline **precludes** the contemplated "reevaluation", pursuant to §3005, he is statutorily entitled to "2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases".[9] His motion remains outstanding. Having requested the appointment of learned counsel,[10] he is entitled to the appointment "promptly," before responding on the merits to the government's motion to stay proceedings.[11]

---

[8] *See* ECF No. 126 (filed *ex parte*).
[9] ABA Guideline 4.1 similarly provides that no fewer than two attorneys should be appointed in capital cases. (*See* Att. A at 952). *See also* Supplementary Guideline 8.1—Training (Att. B at 685).
[10] *See also* ABA Guideline 5.1—Qualifications of Defense Counsel (Att. A at 961); Supplementary Guideline 5.1—Qualifications of the Defense Team (Att. B at 682).
[11] *See also* ABA Guideline 10.2—Applicability of Performance Standards (providing that learned counsel "should provide high quality legal representation in accordance with these Guidelines for so long as the jurisdiction is legally entitled to seek the death penalty" [Att. A at 993]).

**IV. Notwithstanding Defendant's Objection to the Stay, a *Brief* Delay is Necessary to Allow Learned Counsel to Familiarize Herself with Mr. Dangleben's Case and Address the Procedural Posture of the Case and the Appropriate Response to the Government's contemplated "Reevaluation"**

Upon the appointment of learned counsel, undersigned counsel is prepared to provide learned counsel with discovery, pleadings and the remainder of Mr. Dangleben's case file. It will necessarily take learned counsel some time to familiarize herself sufficiently with that information to formulate a position as to how Mr. Dangleben should respond to the government's motion to stay proceedings. For that reason, Mr. Dangleben respectfully requests that the Court order as follows:

a. Mr. Dangleben's reply deadlines and the March 11-12 omnibus hearing are continued *sine die*;

b. Learned counsel is granted fifteen days from the date of her appointment to familiarize herself with the case sufficiently for purposes of addressing the government's motion for stay;

c. At the conclusion of that fifteen-day period, the parties shall meet and confer regarding scheduling future proceedings and deadlines;[12] and

d. Within twenty-five days of the appointment of learned counsel, the parties shall submit either an agreed notice setting forth the parties' position regarding further proceedings, or notices detailing each party's position regarding future proceedings.

Dated: February 21, 2025                Respectfully submitted,

                                        MATTHEW CAMPBELL
                                        FEDERAL PUBLIC DEFENDER

                                        *s/ Matthew Campbell*
                                        MATTHEW CAMPBELL
                                        Federal Public Defender's Office
                                        1336 Beltjen Road, Suite 202

---

[12] The meaningful participation of learned counsel in decision-making regarding further proceedings is an absolute necessity. *See, e.g.,* ABA Guideline 10.8 (Att. A at 1028).

Charlotte Amalie, VI 00802  
Tel (340) 774-4449  
Fax (340) 776-7683  
E-mail: Matt_Campbell@fd.org