IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**RICHARDSON DANGLEBEN, JR.,** )<br>)<br>Defendant. )<br>) | Case No. 3:23-cr-0072 |

**ATTORNEYS:**

ADAM SLEEPER, ACTING UNITED STATES ATTORNEY
MICHAEL CONLEY, CRIMINAL CHIEF
DENISE GEORGE, ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, VI
    FOR THE UNITED STATES OF AMERICA

MATTHEW CAMPBELL, FEDERAL PUBLIC DEFENDER
FEDERAL PUBLIC DEFENDER'S OFFICE
ST. THOMAS, VI

ALLISON FERBER MILLER, ESQ.
RIPLEY WHISENHUNT, PLLC
ARLINGTON, VA
    FOR DEFENDANT RICHARDSON DANGLEBEN, JR.

## MEMORANDUM OPINION

**Robert A. Molloy,** *Chief Judge*

    **THIS MATTER** comes before the Court on the United States' (the "Government") Motion to Stay Proceedings, filed on February 12, 2025. (ECF No. 122.) The Government requests a stay of all proceedings in this matter for 120 days in order for the U.S. Department of Justice to determine whether it will be seeking the death penalty against the Defendant, Richardson Dangleben, Jr. ("Dangleben"). This request for a stay is being made notwithstanding that on February 7, 2024, the Government filed a notice with the Court unequivocally stating that it "will not seek the death penalty for Richardson Dangleben." ECF No. 47 at 1. Due to the obvious serious implications involved, the Court requested briefing

*United States v. Dangleben*
Case No. 3:23-cr-0072
Memorandum Opinion
Page 2 of 9

from the parties.[1] This matter was fully briefed as of April 7, 2025. Because the Government has failed to meet the requirements for a stay, the Court will deny the motion.

## I.

On July 7, 2023, the Government filed a complaint charging Dangleben with first degree murder of a Virgin Islands police officer and possession of a firearm with a removed, obliterated or altered serial number. (ECF No. 1.) On October 13, 2023, a grand jury returned a 13-count indictment charging Dangleben with multiple federal and territorial offenses. (ECF No. 24.) Significantly, Count One charges Dangleben with using a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j)(1). Because the underlying crime of violence alleged in Count One is first degree murder, this charge is an offense wherein the defendant may be sentenced to death if found guilty. *See* 18 U.S.C. § 3591(a).[2]

After Dangleben was indicted, the magistrate judge scheduled an arraignment. At the arraignment, the magistrate judge scheduled this case for a jury trial for December 11, 2023. On November 16, 2023, the Court ordered the Government to file, by no later than January 12, 2024, any notice pursuant to 18 U.S.C. § 3593(a) advising whether the Government will

---

[1] The Government submitted its briefs at ECF Nos. 122, 134, and 148. The defense submitted its briefs at ECF Nos. 129, 140, 146, and 150.

[2] Section 3591(a) provides:

    (a) A defendant who has been found guilty of—

        (1) an offense described in section 794 [18 USCS § 794] or section 2381 [18 USCS § 2381]; or

        (2) any other offense for which a sentence of death is provided, if the defendant, as determined beyond a reasonable doubt at the hearing under section 3593 [18 USCS § 3593]—

            (A) intentionally killed the victim;

            (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

            (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

            (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act,

    shall be sentenced to death if, after consideration of the factors set forth in section 3592 [18 USCS § 3592] in the course of a hearing held pursuant to section 3593 [18 USCS § 3593], it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

be seeking the death penalty in this case. (ECF No. 35.)[3] On January 12, 2024, the date the notice was due, at the request of the Government, and over the objection of the defense, the Court extended the deadline for the Government to file a Section 3593(a) notice by no later than February 12, 2024. (ECF No. 46.) Ultimately, on February 7, 2024, the Government filed the Notice stating that it "will not seek the death penalty for Richardson Dangleben." ECF No. 47 at 1.

At the time the Government filed its notice of "no-seek," the deadline to conclude discovery, disclose expert reports, and file substantive motions, was January 12, 2024, June 3, 2024, and June 29, 2024, respectively. (ECF No 38.) The Court also scheduled jury selection and trial for October 28, 2024. *Id.* However, after the Government filed the notice of "no-seek," the parties took a more relaxed approach to the schedule of deadlines, and more importantly, setting this matter for trial for a date certain. On several occasions, both parties requested the extension to conclude fact discovery, expert disclosures, filing of substantive motions, and the scheduling of jury selection and trial. *See* ECF Nos. 50, 55, 86, 93, and 94. Ultimately, after consultation with the parties on November 7, 2024, the Court rescheduled the omnibus hearing on all pending motions from January 15-16, 2025, to March 11-12, 2025, and continued the jury selection and trial without date. (ECF No. 90.)

Despite the filing of the "no-seek" notice on February 7, 2024, and the parties proceeding with motions practice and trial preparation accordingly, the Government filed a Motion to Stay Proceedings on February 12, 2025, purportedly based on changed circumstances. (ECF No. 122.) The purported basis for the request for a stay was based on a Memorandum issued by the relatively newly appointed United States Attorney General

---

[3] In a case involving charges that could involve a death sentence upon conviction, Section 3593 of Title 18 of the United States Code requires the attorney for the United States of America to sign and file with the court, and serve on the defendant, a notice—

> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death . . . .

18 U.S.C. § 3593(a)(1).

As stated by another district court, "[i]f the death penalty is to be sought, the sooner everyone knows, the better. That is the policy underlying § 3593." *United States v. Ponder*, 347 F. Supp. 2d 256, 271 (E.D. Va. 2004). Subparagraph (a) also grants courts discretion to "permit the attorney for the government to amend the notice upon a showing of good cause." 18 U.S.C. § 3593(a).

*United States v. Dangleben*
Case No. 3:23-cr-0072
Memorandum Opinion
Page 4 of 9

regarding the policy of the new administration to "revive the death penalty," wherein the "'Attorney General's Capital Review Committee is directed to review no-seek decisions in all pending capital-eligible cases (i.e., death-eligible cases that have not yet resulted in a conviction) charged between January 20, 2021, and January 19, 2025.'" Mot. at 2 (quoting the said Memorandum at 3). Beyond stating the reason for the requested stay, the motion fails to address the standard applicable for such a motion. For obvious reasons, the defense objects to any stay in this matter and zealously argues that this matter should proceed as a non-death penalty case.

Recognizing the potential seriousness of the matter, the defense filed a motion requesting a continuance of the omnibus hearing and requested the appointment of Learned Counsel. (ECF No. 126, 127.)[4] In order to properly and thoroughly address the Government's request, the Court continued all hearings,[5] appointed learned counsel for the defense, and required the parties to submit briefing on the Government's request for a stay. (ECF Nos. 131, 132, 133, and 136.)

After initial briefing, the motion was discussed during the status conference held with the Court on March 12, 2025, and the parties were allowed to file supplemental briefs.[6] Having reviewed the written submissions of the parties and having heard the arguments of counsel and upon due consideration thereof, the Court will deny the motion.

---

[4] At no time prior to the Government' motion for stay, did the defense request the appointment of Learned Counsel. It is undisputed that throughout these proceedings up to an until February 2025, the attorneys in the local U.S Attorneys' Office made multiple representations to the defense that it would not be recommending the penalty of death to the U.S. Department of Justice. *See* ECF Nos. 146, 146-1, and 150-1.

[5] The Government also seems to imply that the motion is moot, noting:

> that although the Government initially moved to stay proceedings in this matter, there are no longer any deadlines to stay. The defendant currently has no scheduled trial date and has not had a scheduled trial date since August 2024. ECF No. 59. And the defendant's omnibus hearing and response deadlines were stayed without date, on the defendant's motion, after the Government filed its motion to stay. See ECF Nos. 130, 132. So, the parties are no longer in a situation where there are existing scheduled proceedings . . . .

ECF No. 148 at 1. Although, no trial date is currently set, the Court does not deem the motion moot.

[6] The Court directed the parties to address in the supplemental briefs whether the doctrines of judicial estoppel or laches were applicable to the motion and issues presented therein. Order (ECF No. 142.) Upon consideration thereof, the Court agrees with the Government that neither doctrine applies and, therefore, does not address them herein.

## II.

It is well established that the "District Court's 'power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . .'" *Tyler v. Diamond State Port Corp.*, 816 F. App'x 729, 731 (3d Cir. 2020) (quoting *Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir. 1988) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936))); *see also United States v. Stover*, 576 F. Supp. 2d 134, 146 (D.D.C. 2008) ("'The decision to grant or deny a motion to stay proceedings is left to the sound discretion of the court, in light of the particular circumstances of the case.'" (citation omitted) *quoted in Riley v. United States*, Civil Action No. 10-2087 (JAP), 2011 U.S. Dist. LEXIS 82697, at *22-23 (D.N.J. July 28, 2011)). It is also true that

> a stay is an "extraordinary remedy," *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2013 U.S. App. LEXIS 2706, 2013 WL 1277419, at *1 (3d Cir. Feb 8. 2013) (citing *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)), and the party requesting a stay bears the burden of showing that it is warranted, *Nken v. Holder*, 556 U.S. 418, 433-34, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009).

*Dorval v. Tinlsey*, Civ. No. 12-23, 2019 U.S. Dist. LEXIS 209995, at *3 (D.V.I. Dec. 5, 2019).

When determining whether to grant a motion for stay, courts in the third judicial circuit

> [t]ypically weigh the following considerations: (1) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party"; (2) "whether denial of the stay would create a clear case of hardship or inequity for the moving party"; (3) "whether a stay would simplify the issues and the trial of the case"; and (4) "whether discovery is complete and/or a trial date has been set."

*Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotation marks and citations omitted)).

The Court notes that the district courts' broad, "inherent power to control their dockets, to manage cases effectively, and to 'ensure obedience to their orders,'" *United States v. Yandell*, No. 2:19-cr-00107-KJM, 2023 U.S. Dist. LEXIS 187189, at *9 (E.D. Cal. Oct. 17, 2023) (citations omitted)), extends to setting and enforcing deadlines, including a deadline for filing a Section 3593 notice. Even though the statute is silent regarding any notice to be filed by the government in the event it elects not to seek the death penalty, many courts have

issued deadlines by which the government must indicate whether it intends to seek the death penalty. *See, e.g., id*. at *11-12 (E.D. Cal. Oct. 17, 2023) (concluding, after reviewing caselaw, "Even without this extensive persuasive authority, this court would have little difficulty concluding it has properly exercised its authority to set a deadline for the government to disclose whether it will seek the death penalty."); *United States v. Rivas-Moreiera*, Case No. 1:22-CR-27, 2023 U.S. Dist. LEXIS 243503, at *3-4 (E.D. Tex. Oct. 7, 2023) ("The court does not have the authority to direct the timing of the steps in the DOJ's internal death penalty authorization process; however, the court has the inherent power to manage its own docket, including the timing of the Government's filing of its notice of intent to seek the death penalty under 18 U.S.C. § 3593(a) (citing *United States v. Crusius*, No. EP-20-CR-00389-DCG, 2020 U.S. Dist. LEXIS 132901, 2020 WL 4340550, at *7 (W.D. Tex. July 28, 2020)); *United States v. Rubio-Rangel*, No. 4:18-cr-274, Doc. 165 (S.D. Ga. Oct. 23, 2019); *United States v. Tsarnaev*, No. CRIM.A. 13-10200-GAO, 2013 U.S. Dist. LEXIS 152703, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013); and *United States v. Slone*, 969 F. Supp. 2d 830, 838 (E.D. Ky. 2013)); *United States v. Wilson*, Criminal Action No. 16-20460, 2021 U.S. Dist. LEXIS 130907, at *4-5 (E.D. Mich. July 14, 2021) ("Although courts cannot enforce the Department's internal policies or direct its prosecutorial decision, courts possess the inherent ability to manage its own dockets. Anthony v. BTR Auto. Sealing Sys., Inc., 339 F.3d 506, 516 (6th Cir. 2003). Based on this distinction, some courts have determined that they possess the ability to set a deadline for the Government to decide whether to seek the death penalty." (citing *United States v. Schlesinger*, No. CR-18-02719- 001-TUC-RCC (BGM), 2019 U.S. Dist. LEXIS 237171, 2019 WL 11853370, at *2 (D. Ariz. Sept. 12, 2019) and *United States v. Tsarnaev*, No. CRIM.A. 13-10200-GAO, 2013 U.S. Dist. LEXIS 152703, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013)); *United States v. Hernandez*, 265 F. Supp. 3d 639, 639-40 (D. Md. 2017) ("The Court has the inherent authority to set such a deadline [for the Government to provide notice of its intention to seek the death penalty pursuant to 18 U.S.C. § 3593(a)] and to enforce it, as it will surely do in this case." (citing *United States v. Slone*, 969 F. Supp. 2d 830, 838 (E.D. Ky. 2013) and *United States v. Tsarnaev*, Crim. No. 13-10200—GAO, 2013 U.S. Dist. LEXIS 152703, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013)). As succinctly explained by the court in *United States v. Slone*, 969 F. Supp. 2d 830 (E.D. Ky. 2013), "A defendant is *legally*

*entitled* not to stand trial for his life unless the government files that notice 'a reasonable time before the trial.' *See* 18 U.S.C. § 3593(a) . . . . A filing deadline is thus well within the Court's inherent power to manage its own proceedings." *Id*. at 838 (emphasis in original).

### III.

The Government has provided little to no evidence to support its request for a stay of proceedings. It argues that, because the trial in this matter has been continued without date, any delay as a result of a stay is not prejudicial to Defendant. (ECF No. 134 at 4.) However, the Government cannot dispute that the Court and the parties proceeded for over a year under the impression that the Government would not be seeking the death penalty. The matter was set for trial for a date certain and that date was continued, in part, because of Defendant's reliance upon the Government's notice not to seek the death penalty. Thus, Defendant now would be prejudiced by the change of position by the Government. Rather than addressing the elements necessary to support a motion for stay, as Defendant notes, the Government focuses on timeliness rather than any authority to withdraw or amend a "no-seek" notice after such a notice has been filed. *See* ECF No. 140 at 3-6. Here, timeliness is not an issue because the Government complied with the court-ordered deadline.

Regarding the standards governing a motion for stay, the Court finds that a stay would "present a clear tactical disadvantage to the non-moving party." *Clarity Sports Int'l,* 400 F. Supp. 3d at 182. Because Defendant has been proceeding according to the "no-seek" decision, he has been without the benefit of learned counsel for over a year and, thus, his trial preparation, as well as preparation for any re-review by the Capital Review Committee, is not what it would have been had a "no-seek" notice not been filed. Consequently, despite the fact no trial date is currently set, the prejudice to Defendant cannot be overstated. Usually, when the death penalty is a consideration, learned counsel is appointed on behalf of the defendant at the earliest opportunity possible. In fact, 18 U.S.C. § 3005 requires the court, upon an indictment charging a capital crime, to "promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases . . ." *See, also, e.g., United States v. Monteiro*, CRIMINAL NO. 03-10329-PBS, 2005 U.S. Dist. LEXIS 39121, at *14-15 (D. Mass. Oct. 31, 2005) ("As the First Circuit recognized, 'the reality is that once a determination by the Attorney General is made to seek the death

penalty, the incentive for defendant to plead guilty in exchange for a term of imprisonment is obvious. . . .' In re Sterling-Suarez, 306 F.3d 1170, 1172 (1st Cir. 2002). For that reason, 'learned counsel is to be appointed reasonably soon after the indictment and prior to the time that submissions are to be made to persuade the Attorney General not to seek the death penalty.' Id. at 1173. See 18 U.S.C. § 3005. By depriving learned counsel of exculpatory evidence, defendant has been deprived of the 'practical opportunity for learned counsel to persuade the Attorney General.' Id.").

Having Learned Counsel assist in persuading the government not to seek the death penalty is an immensely favorable outcome for the defense. In the matter at bar, relying on the United States' representations not to seek the death penalty, Defendant did not immediately request the appointment of Learned Counsel. Thus, Defendant has no meaningful opportunity to submit mitigation evidence now in the timeframe the Government is seeking to make a decision. Defendant's trial preparation, therefore, has been affected and any change to the United States' position would be detrimental thereto.

The Court also finds that a stay would not simplify the issues and the trial of the case. *Clarity Sports Int'l,* 400 F. Supp. 3d at 182. As mentioned above, the Government is requesting a 120-day stay in order to determine whether it will be seeking the penalty of death against Dangleben. This by no means simplifies any issue pending before the Court. In fact, to the contrary, if this case were to proceed as a death penalty case, the complexities of this case will be multiplied exponentially. It is not lost on the Court that the Government, in effect, received a *de-facto* stay while the parties briefed this issue coupled with the Court's consideration of the merits of a stay. Nonetheless, the fact remains that the court-ordered deadline for filing a Section 3593 notice has expired. In sum, the Court finds that these considerations weigh against the granting of a stay.

## IV.

For the foregoing reasons, the Court finds that the United States is not entitled to a stay of proceedings in the above-captioned matter.[7] Thus, the Court will deny the

---

[7] Although not directly before the Court, the Court seriously questions whether the Government can amend its "no-seek" notice without a demonstration of "good cause." *See e.g. United States v. Spurlock*, Case No. 3:23-cr-00022-MMD-CLB-1, 2025 U.S. Dist. LEXIS 89675, at *59 (D. Nev. May 9, 2025) (opining that the Federal Death Penalty Act "must be read either to prohibit withdrawal of a no-seek notice altogether or to require good cause

*United States v. Dangleben*
Case No. 3:23-cr-0072
Memorandum Opinion
Page 9 of 9

Government's request for a stay and proceed with the scheduling of the pending matters in this case. An appropriate Order follows.

**Dated:** May 16, 2025                                    */s/ Robert A. Molloy*
                                                                                                **ROBERT A. MOLLOY**
                                                                                                **Chief Judge**

---

to do so."). The Court will decline to address this issue at the present moment because no such request has been made by the Government.