IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:23-cr-0072 |
| ) | |
| **RICHARDSON DANGLEBEN, JR.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**ORDER**

**BEFORE THE COURT** is Defendant Richardson Dangleben, Jr.'s ("Defendant" or "Dangleben") Motion for Change of Venu[e] or in the Alternative for Change of Vicinage. (ECF No. 81.) Due to pretrial publicity, Defendant moves to change the venue in this matter from the District of the Virgin Islands to another federal district. Alternatively, Defendant requests that this matter be transferred from the Division of St. Thomas and St. John to the Division of St. Croix. The Government initially opposed the motion but later entered into a stipulation with the Defendant agreeing to change vicinage and have the jury selection and trial heard in St. Croix. *See* ECF No. 210 ("The parties agree to a change in vicinage to the Division of St. Croix of the District Court of the Virgin Islands."). Notwithstanding the parties' stipulation, the Court will deny the motion without prejudice.

I.

The Government initiated these proceedings by filing a two-count criminal complaint in the District Court of the Virgin Islands – Division of St. Thomas and St. John, charging Dangleben with violations of federal and territorial offenses based on an incident that occurred on July 4, 2023. (ECF No. 1.) A grand jury later issued a 13-count indictment

charging Dangleben with multiple violations of federal and territorial offenses. (ECF No. 24.) Among the allegations is that Dangleben shot and killed a Virgin Islands police officer and shot and wounded another officer.[1]

During the pendency of this case, local media outlets have published multiple articles reporting on various aspects of this case as well as another case pending in the Virgin Islands Superior Court where Dangleben is alleged to have killed another individual. Other public postings include social media postings, press releases issued by the United States Attorney's Office, and published articles discussing the incident specifically naming the defendant and the officers involved in the incident. Defendant contends that the nature, frequency, and adverse news coverage in this case warrants a change of venue.

II.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be tried by impartial jury. U.S. Const., Amend. XI; *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("[T]he right to a jury trial guarantees to the criminal accused a fair trial by a panel of impartial, 'indifferent' jurors."). Adverse pretrial publicity implicates this right. Furthermore, Rule 21 of the Federal Rules of Criminal Procedure also allows a court to transfer a proceeding to another district "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). Defendant contends that, due to adverse pretrial publicity in this case, it is highly unlikely that the Court can pick an impartial jury in

---

[1] The Court recounts the background necessary for a disposition of the pending motion. The Court's recitation is intentionally vague.

the Division of St. Thomas and St. John. Thus, Defendant argues there is presumed prejudice and the Court must change venue and transfer this case to another federal district or, in the alternative, transfer this case to this Court's Division of St. Croix.

Defendant argues that the media and other public postings in this case has created a presumption of prejudice warranting a transfer. "Where media or other community reaction to a crime or a defendant engenders an atmosphere so hostile and pervasive as to preclude a rational trial process, a court reviewing for constitutional error will presume prejudice to the defendant without reference to an examination of the attitudes of those who served as the defendant's jurors." *Rock v. Zimmerman*, 959 F.2d 1237, 1252 (3d Cir. 1992), *overruled on other grounds Brecht v. Abrahamson,* 507 U.S. 619 (1993) (citations omitted). Thus, in order for there to be a presumption of prejudice, "the community and media reaction . . . must have been so hostile and so pervasive as to make it apparent that even the most careful *voir dire* process would be unable to assure an impartial jury." *Id.* (citations omitted). The Third Circuit cautions that "[s]uch cases are exceedingly rare." *Id.* at 1253 (citing *United States v. De Peri*, 778 F.2d 963, 972 (3d Cir. 1985) (where the court states, "It is the rare case in which adverse pretrial publicity will create a presumption of prejudice that overrides the jurors' assurances that they can be impartial." (citations omitted))).

After reviewing the record submitted in this case, the Court is not convinced that the media reporting or that any purported community reaction in this case rises to the level of

presumed prejudice. Additionally, none of the cases cited by Defendant are sufficiently analogous that would warrant a change of venue.[2]

The Court does not doubt that this case can be described as a high-profile case garnering public attention. However, "[a]ny high-profile case will receive significant media attention. It is no surprise that people in general, and especially the well-informed, will be aware of it. Knowledge, however, does not equate to disqualifying prejudice. Distinguishing between the two is at the heart of the jury selection process." *In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015). Moreover,

> [t]he fact that jury members may have been exposed to press reports or other community reaction concerning the case and even the fact that they may have formed a tentative opinion based on that exposure will not establish a constitutional violation if the trial court has found, with record support, that each of the jurors was able to put aside extrinsic influences.

*Rock*, 959 F.2d at 1253.

As succinctly stated by the Sixth Circuit Court of Appeals:

> Prejudice can be presumptive or actual. *Foley*, 488 F.3d at 3887. "Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community" and "is rarely presumed." *Id*. In the absence of presumed prejudice, "the trial court has a responsibility to confront the fact of the publicity and determine if the publicity rises to the level of 'actual prejudice.'" *Ritchie v. Rogers*, 313 F.3d 948, 962 (6th Cir. 2002). "[A] searching voir dire of the prospective jurors is the primary tool to determine if the impact of the publicity rises to th[e] level"

---

[2] For example, Defendant cited the following cases as examples where the court held that the defendant was denied a right to a fair trial: *Rideau v. Louisiana*, 373 U.S. 723 (1963) (where, before trial, defendant's confession to law enforcement to robbing of bank and killing one of three kidnapped bank employee was broadcasted by television news station to community of 24,000 to 53,000 individuals); *Estes v. Texas*, 381 U.S. 532 (1965) (opining that massive pretrial publicity of hearings being broadcasted live by both radio and television denied defendant of right to an impartial jury); *Sheppard v. Maxwell*, 384 U.S. 333 (1966) (opining that defendant accused of bludgeoning his pregnant wife to death was denied a fair trial due to the trial judge's failure to insulate the proceedings from the "massive" pretrial publicity and the "carnival" atmosphere that permeated throughout the trial).

> of actual prejudice. *Id*. At *voir dire*, the court must examine the jurors' statements to determine if there in a community-wide sentiment against the defendant; however, "[n]egative media coverage by itself is insufficient to establish actual prejudice." *Foley* 488 F.3d at 387. When evaluating jurors, "mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint . . . ." *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998). Rather, "[t]he relevant question is 'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Foley*, 488 F.3d at 387 (second alteration in original ) (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984)). If a biased juror was seated who should have been dismissed for cause, we must reverse the conviction. *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001).

*Campbell v. Bradshaw*, 674 F.3d 578, 593-94 (6th Cir. 2012).

Because the presumption of pretrial prejudice is rare, courts should first attempt to ascertain the views of jurors through the jury selection process before transferring a case to another venue. *See Hetzel v. Lamas*, 372 F. App'x 280, 282-83 (3d Cir. 2010) (stating, "[W]e may also look to the record of voir dire to examine the effect of the publicity on the venire" (citations omitted)); *see also United States v. Pedraza,* 27 F.3d 1515, 1525 (10th Cir. 1994) ("Whether a jury harbors prejudice related to pretrial publicity is best determined during voir dire examination." (citation omitted)); *United States v. Green*, 983 F.2d 100, 102 (8th Cir. 1992) ("This court has often stated that it is preferable for the trial court to await *voir dire* before ruling on motions for a change of venue." (citation omitted)); *United States v. Nicolo*, 523 F. Supp. 2d 303, 319 (W.D.N.Y. 2007) (stating, "[W]hether a change of venue is warranted due to prejudicial pretrial publicity depends to a great extent on the actual jury pool and the difficulty at trial of selecting an impartial jury. Courts have therefore held that a motion for

change of venue based on pretrial publicity is usually premature prior to *voir dire*." (citations omitted)). The Court will commence the jury selection process in the District Court of the Virgin Islands - St. Thomas and St. John Division and properly examine prospective jurors. This examination will necessarily include questioning jurors on their prior knowledge of this case and all appropriate follow up questions to determine a prospective juror's ability to be fair and impartial.[3] Thus, the Court will deny defendant's request to change venue and will revisit this issue, if necessary, at the conclusion of *voir dire.*

IV.

For the reasons stated above, the Court will deny the Defendant's motion for a change of venue. Accordingly, it is hereby

**ORDERED** that Defendant Richardson Dangleben, Jr.'s Motion for Change of Venu[e] or in the Alternative for Change of Vicinage, ECF No. 81, is **DENIED without prejudice.**

**DATED:** September 15, 2025                     */s/ Robert A. Molloy*
                                                  **ROBERT A. MOLLOY**
                                                  **Chief Judge**

---

[3] Dangleben recognizes this as appropriate and states in his motion that "[i]f the Court is not prepared to grant the motion now, the Court should defer ruling on it and hold it in abeyance. The Court and the parties can then readdress the motion once *voir dire* proceedings of prospective jurors has begun." ECF No. 81 at 37.