**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:23-cr-0072 |
| ) | |
| **RICHARDSON DANGLEBEN, JR.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ATTORNEYS:**

**ADAM F. SLEEPER, ESQ.**, ACTING UNITED STATES ATTORNEY
**KYLE PAYNE, ESQ.**, ASSISTANT UNITED STATES ATTORNEY
**MICHAEL CONLEY, ESQ.**, ASSISTANT UNITED STATES ATTORNEY
**NATASHA BAKER, ESQ.**, ASSISTANT UNITED STATES ATTORNEY
OFFICE OF THE UNITED STATES ATTORNEY
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR THE UNITED STATES OF AMERICA*,

**MATTHEW CAMPBELL, ESQ.**
FEDERAL PUBLIC DEFENDER
OFFICE OF THE FEDERAL PUBLIC DEFENDER
ST. THOMAS, U.S. VIRGIN ISLANDS

**ALLISON FERBER MILLER, ESQ.**
LAW OFFICE OF ALLISON FERBER MILLER
ARLINGTON, VA
    *FOR DEFENDANT RICHARDSON DANGLEBEN, JR.*

**MEMORANDUM OPINION**[1]

**Robert A. Molloy,** *Chief Judge*

    **THIS MATTER** is before the Court upon Defendant Richardson Dangleben, Jr.'s Motion to Strike the Government's Notice of Intent to Seek the Death Penalty, filed on June

---

[1] Pursuant to Defendant Richardson Dangleben, Jr.'s Motion to Submit Motion to Strike on the Pleadings – Unopposed (ECF No. 211), which the Court granted (*see* ECF No. 212), on August 18, 2025, the Court entered an Order (ECF No. 213), granting the motion to strike. This memorandum opinion explains the Court's reasons underlying said Order.

20, 2025. (ECF No. 179.) The Court granted Defendant's unopposed motion for determination of the motion on the parties' briefs, without oral argument. *See* ECF Nos. 211 and 212. Having reviewed the written submissions of the parties and upon due consideration thereof, the Court granted the motion. (ECF No. 213.) The Court issues this Memorandum Opinion explaining its reasons.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. Initial Arrest and Indictment

On July 4, 2023, Defendant was involved in a shootout with Virgin Islands police officers in the "Jahyard" area of Hospital Ground, St. Thomas, U.S. Virgin Islands. Both Defendant and Virgin Islands Police Detective Delberth Phipps, Jr. (Det. Phipps), sustained gunshot wounds in the exchange and were transported to Schneider Regional Medical Center. Det. Phipps died from his injuries.

Defendant was charged in a complaint filed in the above-captioned matter on July 7, 2023, and arrested upon his discharge from the hospital on July 7, 2023. An Initial Appearance and Preliminary Examination upon the Complaint were held on July 7, 2023, and July 17, 2023, respectively. Defendant was formally detained after hearing upon the United States of America's motion for detention. *See* Order of Detention (ECF No. 17), entered July 17, 2023. As the record reflects, Defendant was charged in a 13-count Indictment filed on October 13, 2023 (ECF No. 24) and a Superseding Indictment on April 16, 2025 (ECF No. 152).[2] Count One of both the Indictment and the Superseding Indictment charges Defendant with using a firearm during a crime of violence or drug trafficking crime under 18 U.S.C.

---

[2] The Superseding Indictment adds a federal predicate offense to Count One as well as a section enumerating aggravating factors outlined in 18 U.S.C. §§ 3591 and 3592.

§924(c) resulting in death pursuant to 18 U.S.C. §924(j). (ECF No. 24 at 1; ECF No. 152 at 1). Because the cause of death alleged is murder, that offense is capital-eligible. 18 U.S.C. §924(j)(1).

### B. Setting Deadline for Death Notice

In a case involving charges that could involve a death sentence upon conviction, Section 3593 of Title 18 of the United States Code requires the attorney for the United States of America (United States or Government) to:

> sign and file with the court, and serve on the defendant, a notice—
>> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death . . . .

18 U.S.C. § 3593(a)(1). Subparagraph (a) also grants courts discretion to "permit the attorney for the government to amend the notice upon a showing of good cause." 18 U.S.C. § 3593(a).

With this statute in mind and at the request of counsel for Defendant, joined by the United States, the Court ordered the United States to file such a notice no later than January 12, 2024. (ECF No. 35.)[3] On January 12, 2024, the date the notice was due, the United States moved for an extension of the deadline, stating that counsel was unfamiliar with the capital case review process and "did not take the necessary steps to obtain a final determination from the Attorney General's Review Committee on Capital Cases by today's date." ECF No. 40 at 1. After the Court granted the requested extension, the United States filed a notice on

---

[3] As the Court recounts in a later order, during a telephonic status conference held on November 8, 2024, "Defense counsel then requested that the Government be directed to file its notice 18 U.S.C. § 3593 [sic] within 60 days and counsel for the Government joined in that request, stating that 60 days was reasonable to file a notice." Order (ECF No. 46), entered January 25, 2025.

*United States v. Dangleben*
Case No. 3:23-cr-0072
Memorandum Opinion
Page 4 of 18

February 7, 2024, stating that it "will not seek the death penalty for Richardson Dangleben." ECF No. 47 at 1. It is important to note that at the time of that filing, trial was scheduled to commence on October 28, 2024. *See* Order (ECF No. 38), entered November 22, 2023.

### C. Filing of Motions and Case Management

Because of the nature of the charges and the potential penalties and voluminous discovery associated with those charges, the Court granted Defendant's Motion to Designate Case as Complex – Unopposed (ECF No. 30). *See* Order (ECF No. 38), entered November 22, 2023. Based upon the "no-seek" notice filed by the Government and the complexities of the case, the parties agreed to a continuance of the October 28, 2024, trial date. *See* Order (ECF No. 59), entered August 19, 2024. By said Order, the motions deadline was reset to November 1, 2024, and an omnibus hearing was scheduled for January 15-16, 2025, with a new trial date to be set at such time. Due to the number and substance of motions filed at or near the deadline and still proceeding as a non-death penalty case, the Court granted the Government's Unopposed Motion for Extension of Time to File Motions and Responses, and to Continue Hearing Date (ECF No. 86), by Order (ECF No. 90), entered November 7, 2024. The order directed that all motions were to be fully briefed by February 17, 2025, and the omnibus hearing was re-scheduled to March 11-12, 2025, with a trial date to be selected at a later date.

### D. Request for Stay

Despite the filing of this "no-seek" notice and the parties proceeding with trial preparations accordingly, on February 12, 2025, the United States filed Government's Motion to Stay Proceedings (ECF No. 122), requesting a stay because the United States Attorney General issued a Memorandum to all employees of the Department of Justice

regarding the policy of the new administration to "revive the death penalty," wherein the "'Attorney General's Capital Review Committee is directed to review no-seek decisions in all pending capital-eligible cases (i.e., death-eligible cases that have not yet resulted in a conviction) charged between January 20, 2021, and January 19, 2025.'" ECF No. 122 at 2 (quoting the said Memorandum at 3). Following extensive briefing and oral arguments on the said motion to stay, the Court denied the motion. *See* Order (ECF No. 155), entered May 16, 2025.[4]

### E. Appointment of Learned Counsel

Upon being put on notice that the United States was reviewing its "no-seek" decision, nearly 16 months after being indicted, Defendant moved the Court for the appointment of Learned Counsel. *See* ECF No. 126, filed February 15, 2025. As required by 18 U.S.C. § 3005, the Court granted the motion and appointed Allison Miller, Esq., as Learned Counsel to represent Defendant. However, as noted by the Court in its Memorandum Opinion accompanying its Order denying a stay, the appointment of Learned Counsel at such a late date provided "Defendant [] no meaningful opportunity to submit mitigation evidence" to the Capital Review Committee. *See* Mem. Op. (ECF No. 154) at 8.

### F. Setting of Trial Date

Having denied the Government's motion for stay, the Court then set this matter for an omnibus hearing on all pending motions on July 23-25, 2025, and jury selection and trial to commence October 6, 2025. *See* Order (ECF No. 157), entered May 20, 2025. This time frame

---

[4] The Court's Memorandum Opinion and Order are reported at *United States v. Dangleben*, Case No. 3:23-cr-0072, 2025 U.S. Dist. LEXIS 93951, 2025 WL 1423842 (D.V.I. May 16, 2025).

balanced Defendant's right to a speedy trial with allowing adequate time for both the parties and the Court to resolve pre-trial motions and complete other preparations for trial.

### G. Filing of Notice to Seek the Death Penalty

Notwithstanding language in the Court's opinion when denying the motion to stay regarding the Court's inherent power to set and enforce deadlines as well as the prejudice to Defendant resulting from not having Learned Counsel appointed "promptly" after being indicted as well as the Order (ECF No. 157) scheduling trial for October 6, 2025, the United States, without withdrawing its prior notice not to seek the death penalty or moving to amend said "no seek" notice, filed a notice of intent to seek the death penalty (Death Notice) on May 21, 2025. *See* ECF No. 159. Defendant moves to strike the notice – the motion currently before the Court.

The Court notes several significant things regarding the timing of the Death Notice: 1) it is not based on new information that wasn't previously available to the Government, that is, there have been no significant case-related developments; 2) it was filed 459 days after the Feb. 7, 2024 filing of the original "no-seek" notice; 3) it was filed 22 months after Defendant's initial arrest; 4) it was filed 19 months after the filing of the first indictment; and, 5) it was filed less than five months before trial.

### II. DISCUSSION

The Government cannot dispute that the Court and the parties proceeded for over twelve months under the impression that the Government would not be seeking the death penalty.[5] The matter was set for trial for a date certain and that date was continued, in part,

---

[5] In fact, because the Government recommended a "no-seek" decision and sought an expedited review from the death penalty review committee, no mitigation evidence was requested from Defendant during the initial

because of Defendant's reliance upon the Government's notice not to seek the death penalty. As Defendant has stated, he would not have agreed to a continuance had he known that the Government could change its position at will. ECF No. 140 at 12-13. Thus, Defendant now is prejudiced by the Government's change of position. As fully set forth herein, the Court will strike the Government's notice of its intent to seek the death penalty for the following reasons: (1) violation of court-ordered deadline; (2) waiver; and (3) failure to establish "good cause" for amending its initial notice to not seek the death penalty.

### A. Violation of Court-Ordered Deadline

It is well established that district courts' broad, "inherent power to control their dockets, to manage cases effectively, and to 'ensure obedience to their orders,'" *United States v. Yandell*, No. 2:19-cr-00107-KJM, 2023 U.S. Dist. LEXIS 187189, at *9 (E.D. Cal. Oct. 17, 2023) (citations omitted)), extends to setting and enforcing deadlines, including a deadline for filing a Section 3593 notice.[6] Even though the statute is silent regarding any notice to be

---

review process. *See* Transcript of Status Conference Hearing, March 12, 2025 (ECF No. 145) at 24-27; *see also* ECF No. 179 at 3 (where Defendant states: "At some point between the filing of the indictment and the arraignment, held twelve days later, defense counsel asked Assistant United States Attorney Michael Conley whether his office planned to request approval to seek the death penalty, and was told that no such recommendation would be made"). Further, based upon the Government's assurances that this was not a death penalty case and, subsequently, the filing of the "no-seek" notice, learned counsel was not "promptly" appointed on Defendant's behalf as required by 18 U.S.C. § 3005.

[6] *See also Dietz v. Bouldin,* 579 U.S. 40, 47 (2016) ("This Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *Taylor v. Shields*, 744 F. App'x 83, 87 (3d Cir. 2018) (declaring the authority of a court to enforce its scheduling order) (citing *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007)); *Hoffman v. Hammerhead Constr., LLC*, Case No. 3:21-cv-0046, 2023 U.S. Dist. LEXIS 167058, at *5 (D.V.I. Sept. 19, 2023) (citing *United States v. Locke*, 471 U.S. 84, 101, 105 S. Ct. 1785, 85 L. Ed. 2d 64 (1985) (finding that deadlines "necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them," but if a deadline "is to have any content, the deadline must be enforced"))); *In re East West Resort Dev. V, L.P.*, Chapter 7, Case No. 10-10452 (BLS), (Jointly Administered), 2014 Bankr. LEXIS 3930, *27 (Bankr. D. Del. Sept. 12, 2014) ("It is self-evident that a court has the authority to enforce its own orders. *In re Cont'l Airlines*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders") (internal citations omitted))); *United States v. Stile*, 3:13-CR-0081, 2013 U.S. Dist. LEXIS 146661, *2-3 (M.D. Pa. Oct. 10, 2013) ("In federal court, '[m]atters of docket control and scheduling are within the sound discretion of the district court.'" (quoting *SEC v. Infinity Grp. Co.* 212 F.3d 180, 197 (3d Cir. 2000) (other citations omitted))); *In re Asbestos Prods. Liab. Litig.*, 278 F.R.D. 126, 129 (E.D. Pa. 2011) ("It is widely

filed by the government in the event it elects not to seek the death penalty, many courts have issued deadlines by which the government must indicate whether it intends to seek the death penalty. *See, e.g., id*. at *11-12 (concluding, after reviewing caselaw, "Even without this extensive persuasive authority, this court would have little difficulty concluding it has properly exercised its authority to set a deadline for the government to disclose whether it will seek the death penalty"); *United States v. Rivas-Moreiera*, Case No. 1:22-CR-27, 2023 U.S. Dist. LEXIS 243503, at *3-4 (E.D. Tex. Oct. 7, 2023) (stating, "The court does not have the authority to direct the timing of the steps in the DOJ's internal death penalty authorization process; however, the court has the inherent power to manage its own docket, including the timing of the Government's filing of its notice of intent to seek the death penalty under 18 U.S.C. § 3593(a) (citing *United States v. Crusius*, No. EP-20-CR-00389-DCG, 2020 U.S. Dist. LEXIS 132901, 2020 WL 4340550, at *7 (W.D. Tex. July 28, 2020); *United States v. Rubio-Rangel*, No. 4:18-cr-274, Doc. 165 (S.D. Ga. Oct. 23, 2019); *United States v. Tsarnaev*, No. CRIM.A. 13-10200-GAO, 2013 U.S. Dist. LEXIS 152703, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013); and *United States v. Slone*, 969 F. Supp. 2d 830, 838 (E.D. Ky. 2013)); *United States v. Wilson*, Criminal Action No. 16-20460, 2021 U.S. Dist. LEXIS 130907, at *4-5 (E.D. Mich. July 14, 2021) ("Although courts cannot enforce the Department's internal policies or direct its prosecutorial decision, courts possess the inherent ability to manage its own dockets. Anthony v. BTR Auto. Sealing Sys., Inc., 339 F.3d 506, 516 (6th Cir. 2003). Based on this distinction, some courts have determined that they possess the ability to set a deadline for

---

recognized that District Court judges "must have authority to manage their dockets . . . ." (citing *In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 822-23 (D.C. Cir. 2009) (where the court notes that overturning the district court's decision to impose sanctions for violating a scheduling order could undermine "the authority of district courts to enforce the deadlines they impose"))).

the Government to decide whether to seek the death penalty." (citing *United States v. Schlesinger*, No. CR-18-02719- 001-TUC-RCC (BGM), 2019 U.S. Dist. LEXIS 237171, 2019 WL 11853370, at *2 (D. Ariz. Sept. 12, 2019) and *United States v. Tsarnaev*, No. CRIM.A. 13-10200-GAO, 2013 U.S. Dist. LEXIS 152703, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013)); *United States v. Hernandez*, 265 F. Supp. 3d 639, 639-40 (D. Md. 2017) ("The Court has the inherent authority to set such a deadline [for the Government to provide notice of its intention to seek the death penalty pursuant to 18 U.S.C. § 3593(a)] and to enforce it, as it will surely do in this case." (citing *United States v. Slone*, 969 F. Supp. 2d 830, 838 (E.D. Ky. 2013) and *United States v. Tsarnaev*, Crim. No. 13-10200—GAO, 2013 U.S. Dist. LEXIS 152703, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013)); *United States v. Ball*, Criminal Action Nos. 05-100-01 (RWR); 05-100-02 (RWR); 05-100-03 (RWR); 05-100-13 (RWR); 05-100-16 (RWR); 05-100-17 (RWR), 2006 U.S. Dist. LEXIS 119324, *5 (D.D.C. Oct. 19, 2006) ("Courts set and enforce pretrial deadlines by which parties must act all the time. Such deadlines are applied against the government and defense alike. . . . To hold that a court cannot fix <u>and</u> enforce such pretrial deadlines would undermine the orderly, expeditious and fair administration of criminal justice in ways difficult to fully imagine." (footnotes omitted)). As succinctly explained by the court in *United States v. Slone*, 969 F. Supp. 2d 830 (E.D. Ky. 2013), "A defendant is *legally entitled* not to stand trial for his life unless the government files that notice 'a reasonable time before the trial.' *See* 18 U.S.C. § 3593(a). . . . A filing deadline is thus well within the Court's inherent power to manage its own proceedings." *Id*. at 838 (emphasis in original). The Government's Death Notice, filed well

over a year after the Court-extended deadline of February 12, 2024,[7] clearly violates that deadline.

The posture of this case is similar to that presented in *United States v. Spurlock*, Case No. 3:23-cr-00022-MMD-CLB-1, 2025 U.S. Dist. LEXIS 89675 (D. Nev. May 9, 2025). As the *Spurlock* court relates:

> In July 2024, the government filed a notice informing Defendant Cory Spurlock that the United States would *not* seek the death penalty against him. (ECF No. 138 ("July 2024 No-Seek Notice").) In April 2025—almost eight months after its formal no-seek decision, and just 12 days before Spurlock's firmly-set trial was scheduled to commence—the government reversed course, filing a new notice informing Spurlock that it now intends to pursue the death penalty after all. (ECF No. 365 ("Death Notice").) The government's wholescale reversal at the eleventh hour comes about two years after a federal grand jury returned the original indictment in this case, and more than four years after Spurlock's initial arrest in April 2021 on related California state charges.

*Id*. at *1. There, as here, the "government had ample opportunity to exercise discretion in determining whether to pursue capital punishment. It formally notified the Court and Defendant it would not so do in advance of a notice deadline . . . ." *Id*. at *2. Like the *Spurlock* court, the Court finds in this case that

> [f]irst the government's Death Notice severely violates the Court's order setting a deadline to declare intent to seek death . . . . Second, the Death Notice violates the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3593, because the government never sought leave to amend its [February] 2024 No-Seek Notice and does not have good cause to do so . . . .

*Id*. at *26.

In opposition to Defendant's motion to strike, the Government argues that any violation of the deadline should be excused based upon "exigent circumstances." ECF No. 190 at 3-5. It is true that courts have excused noncompliance with court-ordered deadlines based

---

[7] *See* Order (ECF No. 46), entered January 25, 2024.

upon "exigent circumstances." *See, e.g., United States v. One 1 2005 Bentley: Cont'l*, CIVIL ACTION NO. 5:15-cv-00123-TES, 2018 U.S. Dist. LEXIS 178281, *8 (M.D. Ga. Oct. 17, 2018) ("Finally, courts have held time and again that an attorney's failure to comply with clear deadlines is not excusable neglect absent some exigent circumstances." (citations omitted). In the absence of a rule, caselaw, or statutory definition of "exigent circumstances," the Court is guided by Black's Law Dictionary, which defines the phrase as "[a] situation that demands unusual or immediate action and that may allow people to circumvent usual procedures as when a neighbor breaks through a window of a burning house to save someone inside." Black's Law Dictionary (12th ed. 2024). Another court notes, "Leading dictionaries agree that the word 'exigent' refers to something that is 'urgent' or that requires 'immediate action or aid.' . . . Exigency relates solely to issues of immediacy, and not to any notions of causation, justification, or excusability." *In re Giambrone*, 365 B.R. 386, 389 (Bankr. W.D.N.Y. 2007). As advised by one court, "'absent exigent circumstances, the undersigned will not grant any additional extensions. Exigent circumstances are not those that are of the parties' or counsel's own making.'" *Clark v. BP Expl. & Prod.*, CAUSE NO. 1:22CV105-LG-RPM, 2023 U.S. Dist. LEXIS 136647, *11 (S.D. Miss. Aug. 7, 2023) (quoting (Order [88], *Culliver v. BP Expl. & Prod., Inc., et al.*, No. 3:21-cv-4942-MCR-HTC (N.D. Fla.)); *see also In re Afolabi*, 343 B.R. 195, 198 (Bankr. S.D. Ind. 2006) ("[I]t appears that he waited until the last minute to seek legal advice and bankruptcy protection. This self-created emergency does not constitute 'exigent circumstances.'" (citations omitted)). Here, the Court finds that a change in administration bringing "attitudinal changes," ECF No. 190 at 5, does not create unusual or urgent circumstances that demand immediate action. The circumstances were wholly government-created and do not require the Court to excuse a violation of its orders. In

addition, at no point did the Government seek a second extension of the deadline or request the Court to provide a new deadline or otherwise request relief from the deadline. Simply stated, a change in the administration of the executive branch does not create an exigent circumstance excusing compliance with this Court's orders.

### B. Waiver

Even if the Government now seeks relief from the deadline, it has waived or forfeited any right it had or may have had to such relief. *See Spurlock*, 2025 U.S. Dist. LEXIS 89675, at *36 (where the court found that the "government 'intentionally relinquished or abandoned' any challenge to the August 2024 deadline, or at least forfeited any objection, by failing to timely raise it." (citations omitted)). Although the Court earlier stated that the doctrine of waiver did not apply, that statement was made in the context of the Government's motion to stay. *See* Memorandum Opinion (ECF No. 154) at 4 n.6. The Government had not yet switched course from "no seek" to seeking the death penalty. Now that the Government has formally changed its position, the Court finds that waiver is applicable and supports the granting of Defendant's motion to strike.

"Waiver 'is the intentional relinquishment or abandonment of a known right.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted)). Because the United States neither withdrew nor sought to amend its "no-seek" notice and then filed its Death Notice well beyond the February 12, 2024, deadline, the Court finds that it waived its right to seek the death penalty in this case.

In *United States v. Ball*, Criminal Action Nos. 05-100-01 (RWR); 05-100-02 (RWR); 05-100-03 (RWR); 05-100-13 (RWR); 05-100-16 (RWR); 05-100-17 (RWR), 2006 U.S. Dist.

LEXIS 119324 (D.D.C. Oct. 19, 2006), the United States failed to file any notice of intent to seek the death penalty by the deadline set by the court five months in advance. By such failure, the Court entered an order "deeming the government to have waived its right to seek capital punishment in th[e] case," and the government moved for reconsideration of that order. *Id*. at *2. In its corrected memorandum order denying the government's motion for reconsideration, the court declared, "Waiver and preclusion is an ordinary and unremarkable consequence of failure to meet clear, court-ordered deadlines, whatever the gravity of the case." *Id*. at *4. The circumstances in *Ball* are analogous to the ones present in the matter at bar, and the Court arrives at the same conclusion as the *Ball* court.

### C. Violation of the Federal Death Penalty Act, 18 U.S.C. § 3593

In the event the foregoing reasons are insufficient to strike the Government's notice of intent to seek the death penalty, the Court further determines that the Death Notice violates 18 U.S.C. § 3593. Section 3593(a) allows the government to amend a death notice "upon a showing of good cause." In this context, "good cause must focus on the diligence of the government in uncovering the new information contained in the Amended Death Notice and the timing of when that information was obtained." *United States v. Le*, 316 F. Supp. 2d 343, 349 (E.D. Va. 2004) [*Le II*]. If there is good cause, the Court then must assess whether the Amended Notice is untimely. *United States v. Le*, 326 F. Supp. 2d 739, 741 (E.D. Va 2004) [*Le III*].

It must be noted that the statute provides only for the amendment of notices to seek the death penalty and is silent regarding no-seek notices. At least one court has intimated that no-seek notices are *irrevocable. United States v. Waggoner,* 339 F.3d 915, 918 (9th Circuit 2003) (where the court, construing the right to appointment of learned counsel under

*United States v. Dangleben*
Case No. 3:23-cr-0072
Memorandum Opinion
Page 14 of 18

18 U.S.C. § 3005, stated "Our reasoning and statutory construction in *Dufur* logically dictate the conclusion that the government's irrevocable decision not to pursue the death penalty eliminated Waggoner's right under § 3005 to a second court-appointed counsel"). The Government maintains that such silence gives it *carte blanche* to withdraw a "no-seek" notice and file a notice of intent to seek the death penalty. ECF No. 190 at 11. The Court agrees with Defendant that such an interpretation would render no-seek decisions meaningless. *See* ECF No. 199 at 17.

Notwithstanding the language in *Waggoner*, the statute requires that any amendment of notices to seek the death penalty must be based upon "good cause." Because the stakes are much higher when amending a no-seek notice to convert it to a notice to seek the death penalty, the standards for amendment should be even more applicable when attempting to amend a no-seek notice. In a case in the same posture as this case, the District Court of Maryland interprets the statute as follows:

> The statute seems to contemplate a less dramatic change than the one in this case—the true amendment of a pre-existing death notice. The government insists that the statute does not say anything about a new death notice, even if a change in position, and that the government is not required to have good cause to entirely change its mind. True, it is a little dismissive to refer to the momentous switch from a formal no-seek notice to a death notice as a mere "amendment." But the purpose of Section 3593(a) is to ensure that the government can only change its mind regarding a death notice when there is good cause to do so. If Congress is concerned by the lesser, surely it would also be concerned with the greater.

*Constanza-Galdomez*, 2025 U.S. Dist. LEXIS 116725 at *32-33. The Court adopts this interpretation, that is, that the principles outlined by Congress in Section 3593(a) apply here. Thus, the Government must, at the very least, show good cause to "amend" its "no-seek" notice. Here, like in *Constanza-Galdomez*, "the government d[oes] not have good cause. The

government does not even try to argue it was diligent, or that it had some legitimate reason for seeking the death penalty so late and contravening its own express statements." *Id.* at *33. Instead, the United States "argue[s] that the rules should not apply to it." *Id.* at *37. *See* ECF No. 190 at 11 (where the Government asserts that it "properly changed its position on pursuit of the death penalty without moving to amend its prior notice on the subject"). Consequently, in the absence of "good cause," the Court finds that the United States's notice of intent to seek the death penalty violates Section 3593(a) and must be struck.

**D. "Reasonableness"**

The Government invites the Court to undertake a "reasonableness" analysis as outlined in *United States v. Ferebe*, 332 F.3d 722 (4th Cir. 2003) and *United States v. Wilk*, 452 F.3d 1208 (11th Cir. 2006). *See* ECF No. 190 at 5-11. Upon review, it appears that no court within the Third Circuit has applied the analysis as set forth in either of these cases. Thus, the Court declines the Government's invitation.

Nevertheless, the Court will address briefly the Government's main argument that the May 2025 notice of intent was filed within a "reasonable time before trial" as required by 18 U.S.C. § 3593(a)(1). To begin, as fully set forth *supra*, the notice clearly violates the Court's February 12, 2024, deadline. The *Ball* court eloquently addressed a similar argument by the United States:

> Finally, notice that it now has filed, albeit out of time, notices of intent to seek the death penalty, the government advances what is perhaps the most troublesome of its argument. It claims that since the death penalty statute requires only that the notice be filed a reasonable time before trial, that is all that matters here. That proposition necessarily would mean that a court properly may set pretrial deadlines but has not power to enforce them. No. case cited by the government reaches that conclusion. Nor is such a perverse result fathomable. Courts set and enforce pretrial deadlines by which parties must act all the time. Such deadlines are applied against the government and

> defense alike. . . . To hold that a court cannot fix and enforce such pretrial deadlines would undermine the orderly, expeditious and fair administration of criminal justice in ways difficult to fully imagine.

*Ball*, 2006 U.S. Dist. LEXIS 119324, at *4-5 (footnotes omitted). The Court has found that it has the authority to set and enforce its deadlines. Since the Death Notice violates the deadline set by the Court, it must be struck.

Next, the Court strongly disagrees with the Government's statement that:

> the filing occurred more than four months before trial and did not meaningfully alter the factual landscape of this case, even if it amplified certain legal theories of the case. Under the circumstances, the NOI does not require the defendant to substantially alter his years-long preparations for trial. Even if this Court disagrees, it should permit the defendant more time to prepare for trial rather than striking the NOI.

ECF No. 190 at 11. It is widely recognized that:

> "[t]he penalty of death is qualitatively different from a sentence of imprisonment, however long." *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). And a capital trial is thus fundamentally different from a non-capital trial. Because the death penalty implicates unique procedural and constitutional requirements, including a separate penalty trial phase, the government's decision to pursue capital punishment triggers resource-intensive processes in practically every arena of trial preparation – from appointment of counsel to motion practice to jury selection to qualification of experts.

*Spurlock*, 2025 U.S. Dist. LEXIS 89675, at *29-30. The preparation for a death penalty case is dramatically different in approach and scope from a non-death penalty case. Clearly, the Government's Death Notice, if allowed to stand, would require Defendant "to substantially alter his years-long preparations for trial."

Moreover, the Court would not be inclined to "grant a continuance because delaying this trial solely to accommodate the government's flip-flopping would implicate the Defendant['s] constitutional speedy trial rights . . . . A delay exceeding one year is

'presumptively prejudicial . . . .'" *Constanza-Galdomez*, 2025 U.S. Dist. LEXIS 116725, at *30

(citing *Doggett v. United States*, 505 U.S. 647 (1992)). The matter at bar is over two years old.

And, as in *Constanza-Galdomez*,

> any additional delay to accommodate the government's change in position would exacerbate an already significant delay occasioned by the complexity of the charges and the length of the trial. *Any such continuance would be solely attributable to the government, and likely improper because the government did not act proactively in its charging decisions.* . . .

*Constanza-Galdomez*, 2025 U.S. Dist. LEXIS 116725, at *30-31 (emphasis added). More importantly, like the defendants in *Constanza-Galdomez*, Defendant, here, has been in federal "custody . . . awaiting trial on the charged events. The anxiety [he has] experienced is no doubt significant given the government's abrupt change in position." *Id*. at 31.[8] Thus, like the *Constanza-Galdomez* court, the Court concludes:

> The government's notice of its intent to seek the death penalty was untimely. This case presents an unusual and extreme situation because the government had directly contravened its prior representations to the Defendant[] and this

---

[8] Further, contrary to the Government's assertion that the notice does not violate the Fifth Amendment, ECF No. 190 at 16, the Court finds that late-filed notice of intent does not honor the procedural due process afforded by the Fifth Amendment. The Government's argument that "the initial notice was not a promise. It was not negotiated for consideration . . ." does not warrant serious attention. As declared by the court in *Constanza-Galdomez*, in response to a similar argument by the Government:

> The government possesses no special authority to go back on its word to a court. If anything, the government's special position comes with the obligation to "turn square corners in dealing with the people." *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 24, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020). To say to these Defendants, whose lives are at stake, "'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government." *Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir. 1970).

*Constanza-Galdomez*, 2025 U.S. Dist. LEXIS 116725, at *34. Moreover, the strictures established by the Federal Death Penalty Act of 1994, Pub. L. 103-322, title VI, such as the prompt appointment of learned counsel and a two-phase trial, are

> not hollow gestures designed to manufacture the appearance of justice; they are there to ensure our justice system gets it right where the government is seeking a drastic and final penalty. The question before this Court is whether the government's belated notice[] of its intent to seek the death penalty comport with Defendant['s] constitutional and statutory rights. The answer is emphatically no.

*Constanza-Galdomez*, 2025 U.S. Dist. LEXIS 116725, at *5-6.

Court. The government asks this Court to treat its belated attempt to seek the death penalty like any other change in a charging document. This Court will not cast aside decades of law, professional standards, and norms to accommodate the government's pursuit of its agenda. Of course, elections have consequences, and this administration is entitled to pursue the death penalty where it can do so in accordance with constitutional and statutory requirements. But this is not one of them. The death notice[] in this case must be struck, and a continuance would not render [it] appropriate.

*Constanza-Galdomez*, 2025 U.S. Dist. LEXIS 116725, at *31-32 (D. Md. June 18, 2025).

### III. CONCLUSION

For the foregoing reasons, the Court finds that Defendant Richardson Dangleben, Jr.'s Motion to Strike the Government's Notice of Intent to Seek the Death Penalty must be granted and the said notice of intent stricken. An appropriate order has been entered. *See* ECF No. 213.

**Dated:** September 15, 2025                    /s/ *Robert A. Molloy*
                                                 **ROBERT A. MOLLOY**
                                                 **Chief Judge**